1
2
3
4
5
6
7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAMON VILLALOBOS,                    No. 2:14-cv-1966-MCE-EFB P

12                  Petitioner,

13        vs.                              FINDINGS AND RECOMMENDATIONS

14   FRED FOULK,

15                  Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the magistrate judge

19   pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Petitioner challenges a judgment of

20   conviction entered against him on September 18, 2012 in the Shasta County Superior Court on

21   charges of: (1) possession of marijuana for sale pursuant to Cal. Health & Saf. Code § 11359; (2)

22   transportation of marijuana pursuant to Cal. Health & Saf. Code § 11360; and (3) misdemeanor

23   possession of a switch-blade knife pursuant to Cal. Penal Code § 21510. He seeks federal habeas

24   relief on the following grounds: (1) the trial court violated his right to present a complete defense

25   when it refused to allow his mother to testify about his role as her primary caregiver; (2) the trial

26   court violated his right to present a complete defense when it refused to allow his cannabis expert

27   to testify; (3) the trial court violated his right to due process when it ruled that, because petitioner

28   possessed more than eight ounces of marijuana, a defense under the Compassionate Use Act

                                              1

("CUA") was inapplicable; and (4) the trial court erred in finding that the husband of petitioner's mother – who did not possess a "valid medical marijuana recommendation" - was her primary caregiver. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In April 2012, a special agent assigned to the police department was on patrol in downtown Redding with a partner. Having observed the tattoos on the arms of the driver of a pickup truck, the agent made a U-turn and followed, determining that the brake light on the top of the pickup's cab was inoperable. The agent decided to make a traffic stop.
>
> Defendant was the lone occupant of the truck. He got out, and the agent's partner frisked him. There was a switchblade in one of defendant's pants pockets. In the other was $910 in cash. Searching the bed of the truck, the agent saw a duffle bag. Defendant admitted that the agent would find about a pound of marijuana belonging to him inside. Inside the duffle bag was a plastic bag labeled "470" and "Black Mamba" containing a little less than one pound of marijuana. There were also a small glass jar and a plastic container with more marijuana buds. The agent also seized a cellular phone from the truck's cab.
>
> After being advised of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694], defendant agreed to speak with the agent. He was taking a pound of marijuana to get money for his girlfriend and for rent. He was broke, and his girlfriend, who was pregnant, had not been working. Half of the money in his pocket was from work, and half was from selling marijuana. Defendant later told the agent that the seized marijuana was not for purpose of sales; defendant had a doctor's recommendation for the use of marijuana for medicinal purposes (although he did not have it with him), and he was returning this medicinal marijuana to the "co-op" because it was "bad." He did not mention anything about taking the seeds in the marijuana to any co-op, or about being in the process of helping his mother with her marijuana needs.
>
> There were many texts and pictures retrieved from the cellular phone. We do not need to relate all the details contained in the briefs of the parties. Suffice it to say that a prosecution witness asserted that the context of these, including those on the day of defendant's arrest, involved the sales of marijuana. Among these were a text message earlier on the afternoon of the arrest that had included a picture of defendant holding the plastic bag seized from

2

his duffle bag, in which he asserted that he had "Hit pay dirt," had as many as needed at "[$]1,000 a pop," and said he would "come see you with one." Shortly before his arrest, defendant had also texted a caution that he would "Just bring one or two because the other was moldy inside."

The defense attempted to provide an innocent context for the contents of the cell phone, asserting that they referred only to defendant's legal purchase of marijuana (and not sales) or to work-related communications. Again, we do not need to elaborate on the details of the testimony of defendant or his coworker, as we presume the jury resolved these evidentiary conflicts against defendant (*People v. Mack* (1992) 11 Cal.App.4th 1466, 1468); in this respect, as we note in the Discussion, the trial court specifically commented at sentencing that it believed defendant's testimony lacked any credibility whatsoever.

With respect to other defense evidence, his parole agent attested that defendant was authorized to possess up to eight ounces of marijuana on his person for medicinal purposes and grow up to six plants. A roommate testified she paid him $400 for rent in $100 bills a couple of days before his arrest.

Defendant testified he lived in an apartment around the corner from his mother's. She was 63, and had a number of health issues for which medical marijuana was recommended. As she had lung problems, she could not smoke it; she ingested it instead. Defendant visited her on a daily basis; he assisted her husband, who "does everything for her," in caring for her. This included housekeeping, handyman tasks, health care, and administering her marijuana.

Defendant had familiarized himself with the parameters of authorized medical marijuana usage. He was a member of a medical marijuana co-op, in which he could bring in marijuana for "in-store" credit from the co-op's garden; he and his mother shared their allocation from the co-op.

On the weekend before his arrest, defendant had stopped at his mother's house. She had thrown out marijuana in her garbage can and in the dumpster because it had too many stems for ingestible marijuana. He retrieved this (along with other discards collected in a bag), sifted through it to collect what was usable, and intended to bring the remainder to the co-op to exchange it for replacement marijuana. He was in the process of taking it to the co-op when the agent stopped him. Half of the contents of the bag belonged to him and half to his mother. (He did not explain either how his half came to be part of what his mother threw away, or came to be admixed with what his mother threw away.) He did not have any intent to sell the marijuana in the bag. He was also going to distribute the seeds in the bag to various co-ops. He had told the agent that he was seeking monetary credit from the co-op for "donating" back the marijuana, not that he was selling it. The agent induced him to admit that he was selling marijuana with promises that he could either keep his truck or the cash seized from him.

*People v. Villalobos*, 2013 WL 6147014, at *1–2 (Cal.App. 3 Dist., 2013) (unpublished).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011)); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.

*Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the

state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A.   Refusal to Allow Petitioner's Mother to Testify (Claim 1) and Designation of the Mother's Husband as Primary Caregiver (Claim 4)

Petitioner argues that the trial court denied him the ability to present a complete defense when it refused to let his mother testify as to his role as her primary caregiver. ECF No. 1 at 6.[2] Specifically, he contends that his mother would have testified as to his daily involvement in her care and their shared use of marijuana. *Id.* He argues that presenting her testimony on these two factors to the jury might have enabled the application of a successful primary caregiver defense which might have exonerated him. *Id.* In the fourth claim to his immediate petition, petitioner also argues that the trial court erred when it determined that his mother's husband, whom petitioner claims does not possess a valid medical marijuana recommendation, was her primary caregiver. *Id.* at 11. He states that California law precludes anyone without a medical marijuana recommendation from being so designated. *Id.* Given that these claims are closely related, the court considers them together. Petitioner raised the first claim on direct appeal. Lodg. Doc. No. 2 (Appellant's Opening Brief) at 14. The court of appeal rejected it, reasoning:

---

[2]  Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

At a foundational hearing before trial, defendant's mother testified that she had a doctor's recommendation authorizing her to possess eight ounces of marijuana for medical purposes. She did not have it with her in court, but represented that her husband had it in his possession outside the courtroom. Defendant had been coming over every day to assist with the repair and maintenance of her home. She is blind in one eye, and has congestive heart failure, coronary/pulmonary disease, rheumatoid arthritis, and diabetes; as a result, she needs care 24 hours a day. Since defendant's release from his most recent incarceration, she "was relying on him quite a bit, giving [her] husband a break [who has] been doing it for approximately 10 years." The county paid for only a limited number of hours of care from her husband; it did not pay for her son's services.

The mother believed that the pound of marijuana seized from defendant's truck had its source at her home. She had directed her husband to throw away old marijuana that was not any good for her purposes; she thought it looked moldy with bug splotches, which would make her ill if ingested. She thought there was about 12 ounces. In throwing it away, she wrapped it in scrap plastic wrap that did not have any writing on it. She and defendant shared their supplies of marijuana. When he came to her home the next day, she mentioned throwing away the spoiled marijuana. She did not testify specifically that she had authorized defendant to try to salvage it; when asked directly about this point, she said only that she had told him it was in the trash, and in retrospect she was sorry that she had done so. She also did not know when he retrieved it from the trash. She admitted that she never saw the marijuana found in the truck, and only assumed it was the same because his arrest was a day or two after she told him about the discarded marijuana.

For purposes of its ruling, the court assumed there was proof of a valid marijuana recommendation for possessing eight ounces. It concluded the testimony failed to show that defendant was acting at his mother's behest in retrieving the marijuana for salvage. It also concluded the evidence did not establish that defendant was his mother's primary caregiver, as opposed to assisting in her care. Therefore, as the proposed testimony did not have anything to do with a defense under the CUA, the court excluded it as irrelevant. Defendant raised the issue again in his motion for new trial; the court did not find any basis for questioning its earlier ruling.

The MMP Act, a legislative clarification of the CUA (*People v. Solis* (2013) 217 Cal.App.4th 51, 57), provides immunity from criminal liability for a primary caregiver who transports marijuana (or possesses for sale to recoup the actual costs of providing it on behalf of a qualified patient). (Health & Saf.Code, § 11362.765.) To come within the definition of a "primary caregiver," a defendant must establish a consistent assumption of responsibility for the qualified patient's care independent of assisting in the provision of marijuana, arising at or before the assistance in providing marijuana; the defendant must also establish that he is the patient's designated primary caregiver. (*People v. Mentch* (2008) 45 Cal.4th 274, 283–285; *People v. Mower* (2002) 28 Cal.4th 457, 475.)

8

It was defendant's burden at the foundational hearing to present evidence sufficient to raise a reasonable doubt about the presence of all of these elements of a MMP Act defense. (*People v. Jackson* (2012) 210 Cal.App.4th 525, 533; *People v. Jones* (2003) 112 Cal.App.4th 341, 349 [sufficient foundation where evidence, if jury credits it, raises reasonable doubt that doctor authorized use of marijuana for medical purposes].) We review a trial court's decision to exclude evidence after a foundational hearing for an abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 197 (*Williams* ).) A trial court's exclusion of defense evidence pursuant to nonarbitrary or nondisproportionate state evidentiary rules does not violate a defendant's state or federal constitutional trial rights unless it denies a meaningful opportunity to present a defense, such as through the exclusion of important evidence. (*Holmes v. South Carolina* (2006) 547 U.S. 319, 324, 326 [164 L.Ed.2d 503]; *People v. Linton* (2013) 56 Cal.4th 1146, 1202; *People v. Pollock* (2004) 32 Cal.4th 1153, 1173.)

We agree with defendant that he established his consistent provision of care to his mother. We disagree that the evidence established her husband "did not and could not provide all the care required," making defendant's assistance essential. To the contrary, defendant's mother noted that her husband had been providing all her care for 10 years, and was doing so once again after defendant's arrest. Furthermore, she never testified that she had ever designated defendant, as opposed to her husband, as her primary caregiver; her testimony thus established at best that she relied on defendant as a backup or relief caregiver, not as her primary caregiver. Defendant has not provided any authority that one qualified patient may designate multiple "primary" caregivers. (*See People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1396 [rejecting concept that qualified patient could designate everyone who provided marijuana seriatim as primary caregivers].) Even if believed, her testimony therefore failed to raise a reasonable doubt that defendant was her primary caregiver. Accordingly, the trial court did not abuse its discretion in excluding this evidence.

In addition, the mother's testimony failed to establish any foundation for a rational conclusion that the discarded marijuana and the marijuana seized from defendant were one and the same. She was not even aware of when defendant may have retrieved the marijuana from the trash, and never authenticated the seized pound of marijuana as being derived from her own 12–ounce moldy and bug-spotted discard. The only evidence at trial referencing mold was the text message (to "Robert") about "the other" marijuana. It thus would be pure speculation at trial to allow use of the mother's testimony to corroborate defendant's testimony to this effect. The trial court's result was therefore correct for this reason as well. (*People v. Brown* (2004) 33 Cal.4th 892, 901 [may affirm evidentiary ruling on different grounds having support in the record].)

Defendant, in conclusory fashion, describes this evidence as having "significant probative value" and thus its exclusion "eviscerated" his case, resulting in a violation of his constitutional rights. Such is

> hardly the case. Defendant was allowed to raise an MMP Act defense, with the jury accordingly instructed. Defendant provided his own testimony in support of this defense. His mother's testimony was therefore simply corroborative, with its source being a witness with obvious bias. The evidence consequently was neither highly probative, nor central to his defense. As a result, the ruling of the trial court did not transgress the charters of our state and nation.

*Villalobos*, 2013 WL 6147014, at *2–4 (Cal.App. 3 Dist., 2013). Petitioner then presented this claim to the California Supreme Court which summarily denied it. Lodg. Docs. Nos. 6 & 7 (Petition for Review & Denial of Review).

Petitioner raised the fourth claim as part of a broader ineffective assistance of counsel claim when he filed a habeas petition in the Shasta County Superior Court in April of 2014. Lodg. Doc. No. 8 (Petition for Writ of Habeas Corpus) at 3.[3] Specifically, he argued that his counsel was constitutionally ineffective insofar as he failed to call the appropriate witnesses – namely petitioner's mother - for an unspecified Medical Marijuana Program defense. *Id*. In his 'supporting facts' he claimed, for the first time, that his mother's husband could not legally be designated her primary caregiver because he was "not legally able to possess or cultivate marijuana which under the law [as a primary caregiver] must be." *Id*. This contention appears to relate to his ineffective assistance of counsel claim insofar as petitioner argues, albeit vaguely, that his counsel should have called the relevant county board of health to determine whether his mother's husband had a valid scrip for medical marijuana. *Id*. In any event, the superior court did not address the specifics of this contention, reasoning instead that the broader ineffective assistance of counsel claim was procedurally barred because both the trial and appellate court had previously rejected his arguments regarding the exclusion of his mother's testimony. Lodg. Doc. No. 9 (Superior Court's Denial of Habeas Corpus) at 1. The superior court went on to note that "[p]etitioner does not address how information from the county board of health would have been relevant or admissible." *Id*. at 2. Petitioner raised his claim regarding the unfitness of his mother's husband to stand as her primary caregiver in his subsequent habeas petition to the

---

[3] The current petition, however, simply characterizes the designation of his mother's husband as a primary caregiver as a state law error committed by the trial court. ECF No. 1 at 11.

California Supreme Court. Lodg. Doc. No. 12 (Petition for Writ of Habeas Corpus to the California Supreme Court) at 4. This time he characterized the claim not as ineffective assistance of counsel, but as trial court error. *Id.* The California Supreme Court denied that petition absent any reasoning save for unexplained citations to three cases – *People v. Duvall* (1995) 9 Cal. 4th 464, 474; *In re Dixon* (1953) 41 Cal. 2d 756, 759; and *In re Swain* (1949) 34 Cal. 2d 300, 304. Lodg. Doc. No. 13 (Denial of Petition for Writ of Habeas Corpus).

### 1. Applicable Legal Standards

#### a. Right to Present a Complete Defense

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense" and the right to present relevant evidence in their own defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The Supreme Court has held, however, that "[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). Moreover, evidence may be excluded if it is "repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes*, 547 U.S. at 324.

A state law justification for excluding evidence does not violate a defendant's rights unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). An exclusion is only unconstitutional if it "significantly undermined fundamental elements of the accused's defense." *Id.* at 315. Even if a court finds constitutional error it may only grant a habeas petition where the petitioner establishes that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

/////

/////

/////

1

2

###### b. Standards Applicable to Federal Review of State Court Fact-Finding

3   In reviewing a petition under § 2254(d)(2) which challenges a state court's findings of

4   fact, a federal court may only grant relief if it determines that the state court was actually

5   unreasonable in its fact-finding. *Schriro*, 550 U.S. at 473. "[A] state-court factual determination

6   is not unreasonable merely because the federal habeas court would have reached a different

7   conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

8           ## 2. Analysis

9   Respondent argues that petitioner's fourth claim is procedurally defaulted. ECF No. 29 at

10  23-24. Respondent emphasizes the California Supreme Court's citation to *In re Dixon* and argues

11  that, in this instance, *Dixon* is almost certainly being held out to announce a procedural rejection.

12  *See In re Dixon*, 41 Cal. 2d at 759 ("The general rule is that habeas corpus cannot serve as a

13  substitute for an appeal, and, in the absence of special circumstances constituting an excuse for

14  failure to employ that remedy, the writ will not lie where claimed errors could have been, but

15  were not, raised upon a timely appeal from a judgment of conviction."). That may be, but in this

16  instance the court finds it more efficient to simply dispose of petitioner's claim on the merits. *See*

17  *Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the

18  issue of procedural bar prior to any consideration of the merits on habeas review, we are not

19  required to do so when a petition clearly fails on the merits.")

20  Alternatively, respondent also asserts that the California Supreme Court's citation to

21  *Duvall* and *Swain* indicate that its rejection of petitioner's fourth claim was a merits adjudication.

22  ECF No. 29 at 25-26. He notes that *Swain* holds that a habeas petition must "allege with

23  particularity the facts upon which [the petitioner] would have a final judgment overturned . . . ."

24  *Swain*, 34 Cal. 2d at 304. Respondent points to *Duvall* for the proposition that a habeas petition

25  "should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii)

26  include copies of reasonably available documentary evidence supporting the claim, including

27  pertinent portions of trial transcripts and affidavits or declarations." *Duvall*, 9 Cal. 4th at 474

28

(internal citations omitted).  The Ninth Circuit has held, however, that "a citation to *Duvall* and *Swain* together constitutes "dismissal without prejudice, with leave to amend to plead required facts with particularity."  *Seeboth v. Allenby*, 789 F.3d 1099, 1103-04, n.3 (9th Cir. 2015).  If petitioner's fourth claim was not adjudicated on the merits, then this court is not constrained by AEDPA and may conduct a de novo review.  *See, e.g., Herbert v. Adams*, 2016 U.S. Dist. LEXIS 125196 at * 14 (C.D. Cal. Aug. 11, 2016).  A decision regarding the proper standard of review is ultimately unnecessary, however.  For the reasons stated hereafter, petitioner's fourth claim fails under de novo review and, consequently, would also fail under the less forgiving AEDPA standard.  *See Sexton v. Cozner*, 679 F.3d 1150, 1156 (9th Cir. 2012) ("Because [petitioner's] claim fails under de novo review, it necessarily fails under AEDPA's deferential review.").

The court evaluates petitioner's first claim under AEDPA and concludes that it fails.  The court of appeal – which issued the last reasoned decision on this issue – was not unreasonable in concluding that his mother's husband was her primary caregiver and, consequently, petitioner was not entitled to present her testimony to the contrary.  Under the CUA, a primary caregiver is defined as "the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person."  Cal. Health & Saf. Code § 11362.5(e).  In concluding that the trial court did not err in designating the husband as the primary caregiver, the court of appeal pointed to foundational hearing testimony from petitioner's mother indicating that her husband had provided all of her care for a period of ten years and had done so again after petitioner was arrested on the immediate charges.  This testimony is plainly reflected in the record.  In relevant part:

> Q.  So, you have – So, how much do you rely on your son to assist you with the – just your daily –
>
> A.  Well, I was relying on him quite a bit, giving my husband a break because my husband's been doing it for ten years.
>
> Q.  Okay.  And when you say "he got out," you're talking about when Mr. Villalobos got out of custody?
>
> A.  Yes.
>
> Q.  And up until he was arrested for this –

1          A.  Yes.

2          Q. – offense? Okay. Without Mr. Villalobos', your son's assistance,
           what – what consequence would –
3

4          A.  It's back to my husband now again 24/7, which is hard on him.

   Lodg. Doc. No. 11 (Reporter's Transcript on Appeal, Vol. I) at 86.   Additionally:
5

6          Q.  And your husband lives with you right?

7          A.  Yes, he does.

8          Q.  And he takes care of you everyday?

9          A. Yes, he does take care of me.

           Q.  And takes care of your medical needs and helping you with
10         your food and shelter and things like that?

11         A.  Yep.

12 *Id*. at 93.  California courts have held that "the text requires that the primary caregiver have

13 "consistently" assumed responsibility for the patient's care."  *People v. Mentch*, 45 Cal.4th 274,

14 283 (2008).  The court of appeal's conclusion that the husband was the consistent, primary

15 caregiver and petitioner was the "backup or relief caregiver" is plainly supported by the testimony

16 of petitioner's mother.  As such, this finding was not unreasonable.

17          Petitioner's fourth claim, as noted above, is reviewed de novo.  His contention that only

18 someone who possesses a medical marijuana recommendation or script can serve as a primary

19 caregiver finds no support in the text of the CUA which simply states "[f]or the purposes of this

20 section, "primary caregiver" means the individual designated by the person exempted under this

21 section who has consistently assumed responsibility for the housing, health, or safety of that

22 person."  Cal. Health & Saf. Code § 11362.5(e).  Additionally, California courts have held that

23 being a primary caregiver "entails an existing, established relationship, distinct from the provision

24 of medical marijuana itself."  *People v. Hochanadel*, 176 Cal. App. 4th 997, 1016 (2009)

25 (internal citations omitted); *see also People v. Frazier*, 128 Cal.App.4th 807, 823 (2005)

26 (rejecting the argument that "a primary caregiver is a person who consistently grows and supplies

27 physician approved marijuana for a medical marijuana patient . . .") (internal quotations and

28 citations omitted).  For his part, petitioner has not cited any case law or statutory authority which

                                                  14

supports his position.  In his previous habeas petition to the California Supreme Court, he cited code sections 11362.765 (b)(3) – (c) which except criminal liability for:

> Any individual who provides assistance to a qualified patient or a person with an identification card, or his or her designated primary caregiver, in administering medical marijuana to the qualified patient or person or acquiring the skills necessary to cultivate or administer marijuana for medical purposes to the qualified patient or person.

Or

> A primary caregiver who receives compensation for actual expenses, including reasonable compensation incurred for services provided to an eligible qualified patient or person with an identification card to enable that person to use marijuana under this article, or for payment for out-of-pocket expenses incurred in providing those services, or both, shall not, on the sole basis of that fact, be subject to prosecution or punishment under Section 11359 or 11360.

Cal. Health & Saf. Code § 11362.765 (b)(3) – (c).  Neither provision stands for the proposition that an individual without a "valid recommendation" or script is precluded from serving as a primary caregiver, however.  Put differently, nothing in the CUA explicitly demands that the primary caregiver and the individual supplying the patient's marijuana be one and the same.  In some instances, the patient herself might take on the burden of procuring his or her own medical marijuana – hence section 11362.765 (b) (1) which carves an exception from criminal liability for "[a] qualified patient or a person with an identification card who transports or processes marijuana for his or her own use."  Cal. Health & Saf. Code § 11362.765 (b)(1).  Such a patient could conceivably shoulder the entire burden of transporting his or her marijuana while still relying on a primary caregiver for their housing, health, or safety.

Additionally, as respondent points out, this claim is presented as purely an issue of state law for which federal habeas relief does not lie.  *Estelle*, 502 U.S. at 67-68.  Petitioner has not offered an explicit explanation of how this particular error (assuming, *arguendo*, that it was error) violated his federal rights.  It seems natural, however, to read this claim as a corollary to his first claim and interpret them as resting on the same constitutional grounds – namely his right to present a complete defense.  To the extent this was his intention, the court relies on the foregoing analysis to reject it.

15

1          **B.      <u>Denial of Expert Witness Testimony</u>**

2          Petitioner argues that the trial court disallowed the presentation of expert testimony which,

3  if presented to the jury, could have exonerated him.  ECF No. 1 at 8.  Curiously, he frames this

4  claim as arising out of the ineffective assistance of his trial counsel - specifically counsel's

5  "failure to call appropriate witnesses" or to "object to preserve the record."  *Id*.  He did not

6  classify this claim as such on direct appeal, however.  Lodg. Doc. No. 2 (Appellant's Opening

7  Brief) at 28.  Respondent's interpretation of the claim is that petitioner has confused his counsel's

8  failure to object and preserve a claim regarding his mother's testimony with that of his proposed

9  expert witness.  ECF No. 29 at 31.  This appears to be correct.  On direct appeal, petitioner did

10  argue that, in urging the admissibility of his mother's testimony, his counsel rendered ineffective

11  assistance by failing to reference the constitutional right to present a defense.  Lodg. Doc. No. 2

12  (Appellant's Opening Brief) at 24.  This claim was mooted, however, when the court of appeal

13  elected to consider his claim regarding his mother's testimony even though it had not been

14  preserved by objection.  *Villalobos*, 2013 WL 6147014, at *2–4 (Cal.App. 3 Dist., 2013).  As

15  such, the court will interpret this claim as tracking the one raised in his direct appeal and his

16  subsequent petition to the California Supreme Court, namely that the trial court erred in refusing

17  to allow expert testimony from cannabis expert Jason Browne.  Lodg. Doc. No. 2 (Appellant's

18  Opening Brief) at 28.

19          The court of appeal addressed and rejected this claim, reasoning:

20                  At the same time defendant sought the foundational hearing about
21          his mother's proposed testimony, he noted that he had a defense
            expert he wanted to call at trial to testify about the operational
22          practices of marijuana co-ops and dispensaries. The trial court
            asked if this testimony would involve opinions about whether those
23          operations were lawful under the MMP Act. Defense counsel
            responded, "Kind of." The court asserted its belief that it was not
24          lawful to trade marijuana with a co-op, and in any event would not
            allow the expert to "testify about the way he ... interprets the law."
25          Defense counsel replied, "That makes sense to me." The court also
            declined to allow the expert to testify that individuals in general are
26          recommended much larger quantities of medical marijuana if they
            need to ingest it rather than smoke it, ruling that the only relevant
27          evidence would be the specific recommendation for the mother (as
            established through testimony from the mother or her doctor to this
28          effect).

On the following day, defense counsel renewed his request for a foundational hearing on the proposed expert testimony. He made an offer of proof that the expert would offer an opinion about the effect of mold on the usability of marijuana generally, and to offer an opinion about his observations of the seized marijuana. The expert would also give his opinion that the law allows qualified patients to trade their marijuana with each other. The court stated that both usability and the legality of trading marijuana were opinions on questions of law (ignoring the proposed testimony about the expert's observation of the seized marijuana) and therefore were not permissible subjects of expert testimony.

In his motion for new trial, defendant also revisited this issue as well. The trial court adhered to its earlier ruling.

Apparently abandoning any claim that his proposed expert could offer opinions on questions of law (*Williams v. Coombs* (1986) 179 Cal.App.3d 626, 638, approved on this point and disapproved on another in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884, 885–886), defendant contends the trial court abused its discretion in declining to conduct a foundational hearing (Williams, supra, 16 Cal.4th at p. 196) with respect to the defense expert's opinions regarding the effect of mold on usability, whether the seized marijuana was in fact moldy, and whether the practice of marijuana co-ops allowed the exchange of old or bad product for new, "all of which would have corroborated why [he] was transporting it." We disagree that any of these subjects are beyond the common understanding of an ordinary juror such that expert testimony was necessary to establish them. Furthermore, we do not find prejudice from a lack of corroboration.

It does not take expert testimony to establish that mold (or bug specks) renders a product unusable (except, perhaps, in the case of cheese). Nor would it have taken an expert to examine the marijuana from defendant's truck and determine whether mold was present; defendant simply could have made that observation himself in his testimony. Finally, while the jury might not necessarily be familiar with the practices of marijuana co-ops, defendant was capable of describing his personal experience with exchanging marijuana for credit against future withdrawals.

As for the lack of corroboration, on the issue of mold defendant testified that he had already sifted through the marijuana discards from his mother, and presumably there would not have been any mold to observe (nor do the parties direct us to any testimony about the condition of the marijuana being less than optimal). As for corroborating that co-ops will exchange marijuana, in closing argument the prosecution never disputed defendant's representation to this effect. Rather, he argued that the case did not have anything to do with the defenses relating to medical marijuana because defendant simply was a drug dealer falsely claiming this as an excuse, who was transporting an amount of marijuana far in excess of any reasonable medical needs. To reiterate the point we have made before, the trial court described defendant's testimony as lacking credibility in any respect. Therefore, we do not find it

| | |
|---|---|
| 1 | reasonably probable overall that defendant would have obtained a more favorable result had the expert testified. |
| 2 | |

*Villalobos*, 2013 WL 6147014, at *4–5. Petitioner raised this claim before the California

Supreme Court (Lodg. Doc. No. 6 (Petition for Review) at 27) and it was summarily denied

(Lodg. Doc. No. 7 (Denial of Petition for Review)).

### 1.    Applicable Legal Standards

The same standards articulated in the previous section regarding a defendant's right to

present a complete defense also apply here. It bears noting, however, that the Ninth Circuit has

emphasized that the United States Supreme Court has never addressed the issue of whether a

"[state] court's exercise of discretion to exclude expert testimony violates a criminal defendant's

constitutional right to present relevant evidence." *Moses v. Payne*, 555 F.3d 742, 758 (9th Cir.

2009); *see also Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) (holding trial courts have

"wide latitude" to exclude unreliable or marginally relevant evidence).

### 2.    Analysis

The court of appeal was not unreasonable in determining that the testimony of petitioner's

expert witness was not necessary to establish: (1) the effect of mold on the usability of

marijuana; (2) whether the seized marijuana was actually moldy; and (3) whether it was the

practice of marijuana co-ops to exchange old or bad product. *Villalobos*, 2013 WL 6147014, at

*5. More fundamentally, the absence of any Supreme Court precedent addressing whether a state

court's discretionary exclusion of expert testimony violates a defendant's right to present relevant

evidence precludes a finding that the court of appeal's decision was contrary to or an

unreasonable application of Supreme Court Precedent. *See Moses*, 555 F.3d at 758-59.

The court notes that petitioner has attached a letter from his proposed expert to the current

petition which vaguely states that "there were several issues that could have been explained to the

jury, by an expert such as myself, . . . that were completely necessary in order for you to mount a

complete and honest defense to these criminal charges." ECF No. 1 at 45 (Ex. B). As the

respondent correctly argues, however, this court is precluded from considering materials which

were not presented in state court. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that record under review is limited to the record before the state court).

### C. Trial Court's Ruling that the Amount of Marijuana Possessed by Petitioner Precluded a CUA Defense

Petitioner argues that the trial court erred in concluding that, because he possessed more than eight ounces of marijuana, a defense under the CUA was inapplicable. ECF No. 1 at 9. This claim was raised in petitioner's habeas petition to the California Supreme Court. Lodg. Doc. No. 12 (Petition for Writ of Habeas Corpus to the California Supreme Court) at 3. As noted above, the California Supreme Court denied the entirety of that petition without any analysis save citations to three cases – *People v. Duvall* (1995) 9 Cal. 4th 464, 474; *In re Dixon* (1953) 41 Cal. 2d 756, 759; and *In re Swain* (1949) 34 Cal. 2d 300, 304. Lodg. Doc. No. 13 (Denial of Petition for Writ of Habeas Corpus).

As with claim four, respondent argues that this claim is procedurally defaulted and, alternatively, that the California Supreme Court's denial was a merits adjudication. As before, addressing the merits of this claim is more expedient because it is plainly without merit. Additionally, the court need not resolve whether de novo or AEDPA review is most appropriate because the claim fails under even the more lenient standard.

First, this claim fails insofar as petitioner has failed to adequately plead its contours. *See Mayle v. Felix*, 545 U.S. 644, 649 (2005) (holding that Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a petitioner to "specify all grounds for relief available to [him]" and to "state the facts supporting each ground."). He does not, for instance, explain what defense the trial court prevented him from raising or cite to any portion of the record which might prove instructive on that point. His petition simply alleges that the trial court erred in ruling that "the defense" was inapplicable. ECF No. 1 at 9. After reviewing the record, the court is unable to find any evidence indicating that the trial court categorically disallowed any defense based on the amount of marijuana petitioner possessed at the time of his arrest. The trial court did, at one point in the early proceedings, state "assuming, for the purposes of argument, he's not doing it for his

mom anymore, like I thought he was doing before, that he's not to be in possession of more than eight ounces of marijuana. So, for him to even be in possession of a pound, to do any kind of thing, swap or whatever, he's over the limit, he's gone, he's done." Lodg. Doc. No. 11 (Reporter's Transcript Vol. 1) at 43. There is no indication that petitioner subsequently asked to raise a defense based on a stated medical need for a pound of marijuana and was denied the opportunity to do so, however.

In his habeas petition to the California Supreme Court, petitioner cited *People v. Kelly*, 47 Cal. 4th 1008 (2010) without explanation – presumably in an effort to argue that the trial court had violated *Kelly's* holding.[4] But the record shows that the trial court was plainly aware of *Kelly* insofar as it referenced that case and acknowledged that a patient could have a recommendation allowing possession of more than eight ounces. Lodg. Doc. No. 11 (Reporter's Transcript Vol. 1) at 36-37. By all accounts, petitioner *could* have raised a defense premised on his medical need for more than eight ounces of marijuana if he or his trial counsel had found such a defense applicable and elected to do so. It may be that the trial court would have denied that defense and this claim would now stand on steadier ground, but habeas relief is not available for hypothetical violations of a petitioner's rights. Rather than raising such a defense, petitioner testified that his purpose in transporting that quantity of marijuana lay in assisting his mother by donating it to a co-op and possibly redeeming it for usable product. *Id.* at 199.

Lastly, the trial court did, as petitioner's earlier claims indicated, determine that he was not his mother's primary caregiver and disallow her from testifying to that effect. That determination did not hinge on petitioner's possession of more than eight ounces of marijuana, however. Rather, it hinged on the overall relevance of her testimony. Lodg. Doc. No. 11 (Reporter's Transcript Vol. 1) at 96-97. In excluding that testimony, the trial court noted that

---

[4] In *People v. Kelly*, the California Supreme Court disallowed Cal. Health & Saf. Code § 11362.77 from being applied to "burden a defense otherwise available to patients or primary caregivers under the CUA . . ." 222 P.3d 186, 213, 103 Cal.Rptr.3d 733, 767, 47 Cal.4th 1008, 1048 (2010). Pursuant to *Kelly*, a patient or primary caregiver may raise as a defense that he possessed or cultivated "an amount of marijuana reasonably related to meet his or her current medical needs . . . without reference to the specific quantitative limitations specified by the MMP." *Id.* at 213-214.

petitioner's mother had a recommendation for no more than eight ounces of marijuana (*id*. at 96), but that statement was consistent with her testimony (*id*. at 85) and did not speak to or automatically preclude any defense petitioner might have raised concerning his medical need for more than eight ounces.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 18, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE